## COMMONWEALTH *vs.* FRANCIS L. WHITE.

Suffolk.   Nov. 21, 1887. — Jan. 2, 1888.   DEVENS & W. ALLEN, JJ.,
                                                      absent.

At the trial of an indictment in several counts for forging and uttering twelve bills of parcels, the defendant filed a motion to quash the indictment, but, instead of arguing the motion at the outset, consented that the court should reserve all his rights under it, with the understanding that it would be disposed of at a later stage of the case.   After the case for the government was closed, the motion to quash was argued, and the presiding judge quashed several of the counts of the indictment; but refused to strike out the evidence introduced under these counts. *Held*, that, if the evidence was admissible under the remaining counts, the defendant had no ground of exception.

At the trial of an indictment for forging and uttering certain receipted bills of parcels, the persons whose names appeared on the bills as signers testified that they did not sign them, and that the bills did not represent genuine transactions.   The defendant, who appeared on the bills as the purchaser of the goods therein mentioned, used the bills, certified upon them that A. was the owner of the goods, received money for them from A., and gave A. his promissory notes for the amount. *Held*, that the evidence was sufficient to warrant a conviction.

At the trial of an indictment for forging and uttering certain receipted bills of parcels, evidence is admissible, on the question of the defendant's knowledge that the bills were forged, that he fabricated certain other unreceipted bills of a like character, and uttered them to the same person to whom he uttered the receipted bills, by a continuous series of transactions, extending some months later than the latest forgery mentioned in the indictment.

An indictment for forgery described the instrument alleged to be forged as an acquittance and discharge for money, and set forth a bill of parcels purporting to be receipted. *Held,* that the instrument was not misdescribed.

HOLMES, J. 1. The most serious question in this case arises in a way for which the defendant is partly responsible. The indictment was in fifty-four counts, for forging and uttering twelve bills of parcels; and a motion to quash was filed. But the defendant, instead of arguing the motion at the outset, consented that the court should reserve all his rights under it, with the understanding that it would be disposed of at a later stage. Accordingly the trial proceeded, and evidence was put in under all the counts. Then, at the close of the government's case, the motion to quash was called up, and by the consent of the government all but six counts were quashed. The defendant thereupon asked that the evidence introduced under the other counts should be stricken out, but the court refused so to order.

It is suggested that the defendant has suffered by a device intended to get before the jury evidence which was not admissible on the issues upon which he was convicted, under the pretence that it sustained other issues, which were abandoned when the evidence was in. It need not be said that, if this appeared to be the fact, the verdict could not stand. But we cannot gather any such conclusion from the record. The question whether the evidence was admissible upon the issues finally tried is as fully open, and is to be considered on the same principles, as if the counts not quashed had been the only ones from the beginning. If it were true that evidence was offered upon one issue and retained for its bearing upon another, it would be hard to see how the defendant had suffered if it was admissible upon that other, even though the former was a charge of a distinct substantive felony. See *Commonwealth* v. *Stearns,* 10 Met. 256. But, so far as appears, the evidence was offered and admitted generally for any purpose for which it was competent, and if at the time there was a possibility that its chief use was to sustain the other counts, the opposite possibility was no less plain to the defendant, who was insisting that those counts were bad. The uncertainty was by the defendant's consent, who had agreed that they need not be

passed upon until the evidence was in. We see no reason why he could not consent to a course which preserved all his rights.

We are of opinion that the evidence was admissible under the counts not quashed, upon which the defendant was convicted. These counts were for forging certain receipted bills for hides, &c., and for uttering the same. The evidence objected to tended to show that the defendant fabricated certain other unreceipted bills of a like character, and uttered them to the same persons, by a continuous series of transactions, extending some months later than the latest forgery of which the defendant was convicted.

It appeared that there was a contract between H. Leonard and Company and the defendant, by which Leonard and Company were to sell the defendant hides, which were to be tanned and sold by him, he giving Leonard and Company his note at four months for a little more than the sum paid by them, and the property in the hides remaining in Leonard and Company until all the notes were paid.

The government's evidence tended to show that a frequent course of dealing — or at least the course of dealing as it was made to appear to Leonard and Company in the alleged fraudulent transactions — was, that, instead of Leonard and Company themselves purchasing the hides which the defendant was to tan, the defendant purchased them, presented the bill from the sellers to him, receipted in the earlier transactions, afterwards unreceipted, to Leonard and Company, wrote upon it that the hides belonged to Leonard and Company under the contract, or to that effect, received the cash to pay for them, and gave his note as provided in the contract, just as if Leonard and Company had themselves ordered and paid for the hides, and had then consigned them to him. It will be seen that the use made of the bill, receipted or unreceipted, was to show it to Leonard and Company, in order to satisfy them that hides had been bought, which were to belong to them, and for which they were to pay in the first instance, under the contract, and thus to enable the defendant to get cash, giving his note in return.

All the bills, then, receipted or unreceipted, if known by the defendant not to be genuine, were used by him, in a single scheme of fraud, under his contract with Leonard and Company.

*Lynde* v. *McGregor*, 13 Allen, 172, 180. *Jordan* v. *Osgood*, 109 Mass. 457. *Commonwealth* v. *Eastman*, 1 Cush. 189, 216. And on the question of the defendant's knowledge that the bills in issue were not genuine, his possession and use of other similar false bills, about the same time, whether before or afterwards, in a continuous series of transactions with the same persons under the same contract, was competent to show that his use of the former was not innocent. *Commonwealth* v. *Coe*, 115 Mass. 481, 501. *Commonwealth* v. *Hall*, 4 Allen, 305, 306. *Commonwealth* v. *Price*, 10 Gray, 472, 476. *Regina* v. *Forster*, Dearsly C. C. 456. Thus the evidence satisfies the general conditions which have been laid down in similar cases. See further *Commonwealth* v. *Jackson*, 132 Mass. 16, 18. To be sure the evidence was not admissible to prove that the bills in issue were forged; *Costelo* v. *Crowell*, 139 Mass. 588; and the jury were so instructed; and it might be thought that in a case like this, when the bills ran to the defendant, purported to be for hides bought by him, and were certified by him, if the jury believed that the bills were forged it would follow almost necessarily that the defendant knew them to be so, and so it might be thought that the evidence of his use of other false bills was unnecessary for the purpose for which it was admitted, while it tended to prejudice the defendant in the eyes of the jury. But the defendant's knowledge was not admitted; on the contrary, it is still argued that there was no sufficient evidence to warrant the verdict; and evidence of knowledge which otherwise would be admissible is not made inadmissible by the fact that there is other strong evidence of knowledge in the case.

It is argued that the bills not in issue which were put in were not signed, and therefore were not forgeries, and were inadmissible for that reason. It is not necessary to consider whether they were technically forgeries. See *Commonwealth* v. *Ayer*, 3 Cush. 150, 152. *Commonwealth* v. *Hinds*, 101 Mass. 209, 210. For if they were not, they were none the less admissible. Being fabricated instruments similar to those in issue in every respect except in regard to signature, their tendency to show knowledge and a fraudulent scheme on the defendant's part was not affected by the degree or kind of fraud committed in their manufacture and use. They equally purported to be a

declaration by the supposed sellers, in the course of business, that they had sold the hides mentioned in them to the defendant, whether they acknowledged or demanded payment; and, signed or unsigned, they equally served the purpose of getting the amount of the bill from Leonard and Company.

2. We can have no doubt. that the evidence warranted a conviction. The persons by whom the bills purported to be made out and signed testified that they were not genuine, and did not represent genuine transactions. The defendant, who fairly might be presumed by the jury to know the facts about sales purporting to have been made to him, used the bills, certified upon them, and received the money for them, as has been stated. It is suggested that, by the contract, Leonard and Company were authorized to buy for him, and that they may have had the bills made out, or at least that he may have supposed the bills to be genuine and correct; but it is a mistake to say that the contract authorized Leonard and Company to buy as agents for the defendant, or to charge goods to him. The phrase in the contract, "except in case the hides are bought by said Leonard and Company for said White," does not import any such authority. It means only to distinguish hides bought for the purpose of being sold to White from those bought by Leonard and Company in the ordinary course of their business, and afterwards sold to him. And it appears on the face of the contract that the only purpose of this distinction is to adopt a different way of fixing the date from which White shall be charged with interest. The contract throughout contemplated Leonard and Company's purchasing hides on their own behalf, and selling them to the defendant only after his notes had been paid. There was no evidence of any course of dealing by which they bought in his name, or of any case where they had done so, and there was no reason why they should have given their check to him if they had conducted or had purported to have conducted the dealings with the supposed seller of the hides. On the face of the transactions there was evidence that the defendant uttered the bills (3 Inst. 171) knowing them to be false, if they were false in fact. But, in addition, there was evidence as to the Morey bill that Leonard and Company had no transaction with Morey, and

that the defendant did buy hides corresponding to a part of the hides set forth in the bill; and evidence tending in the same direction as to the other persons named in the indictment, and that all that Leonard knew of the supposed transactions with them he learned from the defendant. It is true that the defendant's clerk could not say from whom he received any particular bill, but he testified that they were all brought by the defendant or left at the office, where the defendant then wrote his name on them and got the money. We do not think it necessary to state the evidence in greater detail. See *Commonwealth* v. *Talbot*, 2 Allen, 161. The fact, if it be one, that the defendant intended to pay his notes at maturity, did not affect his liability. *Commonwealth* v. *Henry*, 118 Mass. 460, 463.

3. The motion to quash was rightly overruled. Each of the counts submitted to the jury describes the bill of parcels set forth in it as an acquittance and discharge for money. The defendant contends that this is a misdescription; but a receipted bill for goods purports to be an acquittance and discharge for the money due in respect of those goods. *Commonwealth* v. *Ladd*, 15 Mass. 526. See *Commonwealth* v. *Talbot, ubi supra.* The instrument being set out, and purporting on its face to be the thing prohibited to be forged, Pub. Sts. *c.* 204, § 1, there is no need of further allegations to show how it was that thing, or how it could be used as an instrument of fraud, or that it was so used in fact. 2 East P. C. 977. *Commonwealth* v. *Costello*, 120 Mass. 358. *Commonwealth* v. *Ladd, ubi supra.* There is a slight peculiarity in the receipt set out in the seventh count, as it bears, in addition to the words " Terms cash," the words " Our sight draft." But the word " Settled," followed by the signature, imports a discharge of the money due for the price, whether it was discharged by money or draft. Whether it is not to be read as importing a settlement in money, especially in view of the words " Paid for by H. Leonard & Co. " in the margin, we need not consider. We notice nothing else in the exceptions which calls for particular remark.

*Exceptions overruled.*

*E. Avery*, for the defendant.

*A. J. Waterman*, Attorney General, & *H. C. Bliss*, Assistant Attorney General, for the Commonwealth.