**CENDAK AGRI–SERVICE, INC., a corporation, Plaintiff and Appellee,**

v.

**James HAUSMAN, Defendant and Appellant.**

**Civ. No. 9514.**

Supreme Court of North Dakota.

Feb. 1, 1979.

Thomas E. Rutten, of Traynor & Rutten and Tom Traynor, Jr., law student, Devils Lake; for defendant and appellant, argued by Thomas E. Rutten, Devils Lake.

James H. Williams, Towner, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

The defendant, James Hausman, appeals from the order of the District Court of Benson County, dated April 13, 1978, denying the defendant's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. He does not appeal from the judgment itself which was rendered on the first day of February, 1978, in the sum of $8,792.70 plus costs. The judgment was based upon a verdict of the jury in the amount of $7,096.53 to which the court added interest at the rate of six percent per annum computed to January 17,

1978, in the sum of $1,696.17. We shall hereinafter refer to the plaintiff as Cendak, and to the defendant as Hausman.

The essential parts of the complaint, read:

"2.

"That on or about January 23, 1974, defendant sold approximately 123 hogs owned by Plaintiff and which were being cared for by Defendant under an agreement whereby Plaintiff was to furnish feeder pigs and all feed and veterinary expense and Defendant was to furnish labor and housing for the pigs, and with Defendant to receive 25% of the net proceeds realized from the sale of the pigs. That the amount received for the 123 pigs sold was $10,848.54. That although the 123 pigs in question were owned by Plaintiff, Defendant without any authority caused the same to be sold and the check for sale proceeds to be issued in his name. That on or about January 27, 1974 Defendant cashed the check in question and converted the funds to his own use.

"3.

"That with the sale of the hogs in question, the net profit from feeder pig sales to the date of this sale was $23,008.03 of which amount Defendant under the agreement was entitled to receive 25% or a total of $5,752.01; that Defendant had already received advances of $3200.00, leaving a balance due him in the amount of $2552.01, with the balance of $8,296.53 belonging to Plaintiff.

"4.

"That Plaintiff has demanded that Defendant pay over and account to Plaintiff for the property and funds illegally converted to his own use, but Defendant has failed and refused to do so.

"5.

"That Defendant also kept and converted to his own use approximately 5000 straw bales of the reasonable value of 25¢ per bale, or a total of $1250.00.

"6.

"That as a result of defendant's wrongful, illegal and fraudulent selling and converting Plaintiff's property and money to his own use, Plaintiff has suffered damage in the form of interest paid by Plaintiff on bank loans which were to have been paid from the sale of the hogs converted and misappropriated by Defendant. That the rate of interest paid by Plaintiff and its stockholders was and is 9% per annum, which on the principal sum of $8296.53 from January 23, 1974 to August 23, 1977, totals $2675.62 plus accrual from 8–23–77 at the rate of $2.07 per day."

The prayer for relief is for judgment in the sum of $12,222.15 plus interest at the rate of $2.07 per day from 8–23–77 plus interest at the legal rate on all amounts due and owing Cendak and for costs and disbursements.

Hausman filed an answer and counterclaim, the pertinent parts of which read:

"Now comes the above named Defendant and for his Answer to the Plaintiff's Complaint, alleges as follows, to-wit:

\*     \*     \*     \*     \*     \*

### "FOURTH DEFENSE

"That the Defendant entered into preliminary negotiations with one Wayne Trottier whereby the Defendant and said Wayne Trottier discussed a certain proposal which was to be reduced to writing which would require the Defendant to furnish certain labor and materials for the purpose of raising pigs in exchange for a certain percentage of the net profits realized from the sale of such pigs or, in the alternative, to provide that the Defendant received a certain flat rate for each pig raised. That the preliminary negotiations never resulted in any definite agreement, nor were such preliminary negotiations ever reduced to writing.

### "FIFTH DEFENSE

"Pursuant to the preliminary negotiations of Wayne Trottier who allegedly represented the interests of the Plaintiff corporation, the Defendant incurred considerable expense in time and labor in constructing certain buildings, remodeling other buildings and other miscellaneous work in reliance on the preliminary negotiations which the Defendant was led to believe would result in a definite written contract relating to the pig operation.

### "SIXTH DEFENSE

"That in reliance on the preliminary negotiations and statements of Wayne Trottier as alleged hereinabove, the Defendant was required to spend the sum of Twelve Thousand Four Hundred Eighty-two Dollars and Thirteen Cents ($12,-482.13) for labor and materials and the Defendant was required to work a total of Two Thousand One Hundred Twenty-one (2121) hours which said labor was worth a minimum of Three Dollars ($3.00) per hour resulting in total expense to the Defendant for his own labor and paid labor and materials in the amount of Eighteen Thousand Eight Hundred Forty-five Dollars and Thirteen Cents ($18,-845.13).

### "SEVENTH DEFENSE

"That the Defendant admits that he negotiated a certain check realized from the sale of certain pigs from the pig operation mentioned hereinabove which resulted in a payment to the Defendant in the amount of Ten Thousand Eight Hundred Forty-eight Dollars and Fifty-four Cents ($10,848.54) which compensated the Defendant for part of the labor and material expense he incurred and as alleged hereinabove. That in addition to the sum of Ten Thousand Eight Hundred Forty-eight Dollars and Fifty-four Cents ($10,848.54) realized from the sale of the pigs on or about January 23, 1974, the Defendant also was advanced the sum of Three Thousand Dollars ($3000.00) during the time of the preliminary negotiations mentioned hereinabove.

\*     \*     \*     \*     \*     \*

"Now comes the above named Defendant and for his Counter-claim herein alleges as follows, to-wit:

\* \* \* \* \* \*

"II.

"That the Defendant is entitled to payment of the total sum of Eighteen Thousand Eight Hundred Forty-five Dollars and Thirteen Cents ($18,845.13) for his labor and materials as alleged hereinabove but the Defendant admits that he has received the total sum of Thirteen Thousand Eight Hundred Forty-eight Dollars and Fifty-four Cents ($13,848.54) resulting from the sale of certain pigs and an advance payment of Three Thousand Dollars ($3000.00)."

In his prayer for relief, Hausman asked for judgment in the sum of $4,996.59 plus interest at the rate of six percent per annum from January 23, 1974, and for his costs and disbursements.

In his motion for a new trial on the basis of Rule 59, N.D.R.Civ.P., Hausman asserted three grounds: (1) irregularity in the proceedings, (2) insufficiency of the evidence to support the verdict, and (3) errors in law occurring at the trial. In the alternative, he moved for judgment notwithstanding the verdict on the basis of Rule 50, N.D.R. Civ.P.

Relative to the first alleged basis for a new trial, irregularity in the proceedings, our court has said:

"1. An irregularity in the proceedings of the court, jury, or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial may justify the granting of a new trial, but an irregularity to justify a new trial must be one which is patent, obvious, or evident from the record." *Bohn v. Eichhorst*, 181 N.W.2d 771, 772 (N.D.1970).

Relative to the second alleged basis for a new trial, insufficiency of the evidence to support the verdict, we have said:

"A motion for a new trial upon the ground of the insufficiency of the evidence is addressed to the sound discretion of the trial court and the granting of such a motion will not be disturbed upon appeal except for a manifest abuse of that discretion." *Ferguson v. Hjelle*, 180 N.W.2d 408, 413 (N.D.1970).

For a recent analysis of the law applicable to a motion for new trial in determining whether or not a trial court appropriately granted a new trial, *see Cook v. Stenslie*, 251 N.W.2d 393, 396 (N.D.1977).

As to the third alleged basis for a new trial, errors in law occurring at the trial, we believe that the rule applicable to irregularity in the proceedings is applicable.

Let us examine the alleged irregularities which occurred during the trial which Hausman contends justify a new trial.

Hausman contends that irregularities in the proceedings resulted when the jury, during the course of its deliberations, sent certain written questions to the court. He asserts that these questions were answered by the judge in writing, without asking the jury to return to the courtroom and the presence of the judge, and without consulting the attorneys or the parties. The judge merely wrote his answers to the questions on the sheets of paper sent to him by the jury after informing counsel of his intended answers although counsel objected to some of the proposed answers and to the failure on the part of the judge to return the jury to the courtroom. Although the court reporter was not present at the time, the objections were later entered as a matter of record.

The first note from the jury asked the following question: "Can any of the amounts claimed by either party be altered?" The court wrote in answer thereto: "Yes."

Later, the jury in a second written note asked the following questions: "Which is the total claim of the plaintiff and the defendant. And the amount of the checks. Price of straw."

The court wrote the following in response thereto: "1) & 2) See page 1 of instructions. 3) $10,848.54. 4) $1,250.00." Hausman con-

tends that the judge should have consulted the attorneys before answering the questions and permitted any objections that counsel had at that time to be made on the record. He further contends that the judge should have called the jury back into the courtroom in the presence of counsel, asked the jury to explain its questions, and then answered those questions.

We believe that our statute on the subject generally supports this view.

"After the jurors have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed of any point of law arising in the case, they may require the officer to conduct them into court. Upon their being brought into court the information required must be given in the presence of or after notice to the parties or counsel." § 28–14–19, N.D. C.C.

In support of his contention that the court erred in the procedure it followed in answering the questions submitted by the jury in writing, Hausman refers us to the United States Supreme Court decision of *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919). In *Fillippon*, the jury sent the trial judge a written inquiry and the trial judge replied by sending a written instruction to the jury room in the absence of the parties and their counsel, without their consent, and without calling the jury into open court.

The facts were somewhat different from the facts in this case in that in *Fillippon* the parties and their counsel were absent when the judge returned a written response. Nonetheless, we think that what the Supreme Court said in that case is pertinent here.

"The Circuit Court of Appeals considered that the jury had asked a plain question in writing concerning a matter of law, and the judge had answered it in writing plainly and accurately, and were of the opinion that since nothing else had occurred—the question and answer having been preserved of record and counsel having been promptly notified of what had taken place and given the opportunity of excepting to the substance of the instruction and to the manner of giving it—no harm had been done, and none was probable to arise under like circumstances, and hence affirmed the judgment.

"It is not correct, however, to regard the opportunity of afterwards excepting to the instruction and to the manner of giving it as equivalent to an opportunity to be present during the proceedings. To so hold would be to overlook the primary and essential function of an exception, which is to direct the mind of the trial judge to the point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling if convinced of error, and that injustice and mistrials due to inadvertent errors may thus be obviated." 250 U.S. at 81–82, 39 S.Ct. at 436–37, 63 L.Ed. at 856.

In the instant case, the error is even more grave in that the question relative to the price of straw was not a question of law but a question of fact, and questions of fact must normally be left for the triers of the fact to determine.

It has been argued in our court by counsel for Hausman that the judge in the instant case took his answer as to the price of straw from the allegations of the complaint and not from the testimony submitted in court. To our knowledge, this has not been denied by counsel for Cendak.

■ What we have here then is not only an irregularity in the procedure, but an error in the answer given to the jury. It could be argued that a solution might be a reduction in the verdict of the maximum amount that the jury could have assessed Hausman for the straw. Such a solution, which would be conditional upon the granting of a new trial if it were not accepted by Cendak, would involve speculation, however, as to the effect of that particular answer upon the jury's verdict, and for that reason we have not adopted that approach as a solution to this problem. We believe additionally that such an approach would not discourage a similar procedure in the future.

■ We shall not discuss the other North Dakota cases cited by the parties on this issue including *State v. Murphy*, 17 N.D. 48, 115 N.W. 84 (1908); *Ferderer v. Northern Pacific Ry. Co.*, 75 N.D. 139, 26 N.W.2d 236 (1947); *Leake v. Hagert*, 175 N.W.2d 675 (N.D.1970); and *State v. Klein*, 200 N.W.2d 288 (N.D.1972), for the reason that they are all somewhat distinguishable upon the facts from this case. We do note, however, that the basic lesson to be learned from them is that there is value in having the jury returned to the courtroom if the members have questions which they wish to submit to the court, and that this be done in the presence of counsel and the parties and upon the record, at which time counsel may, in chambers if the court deems it appropriate, present their views as to the appropriate answer or response to be given by the court to the questions, and object to responses which they believe to be inappropriate.

■ Cendak contends that should this court determine that the procedure herein involved was an irregularity and thus an error on the part of the court, it was an error without prejudice and therefore under Rule 61, N.D.R.Civ.P., was harmless error.

Rule 61, N.D.R.Civ.P., reads:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Without attempting to point out how the cases support its position, Cendak relies on *Hoag v. City of Detroit*, 185 F.2d 764 (6th Cir. 1950); *Atlantic Coast Line R. Co. v. Burkett*, 192 F.2d 941 (5th Cir. 1951); and *Wesco Foods Co. v. Demase*, 100 F.Supp. 386 (W.D.Pa.1951), aff'd. 194 F.2d 918 (3rd Cir. 1952).

From what we have already indicated, it should be discerned that this is not our view. We are not convinced by those decisions.

Having made this decision, we find it unnecessary to respond to parts two and three of the motion for a new trial. Without predetermining the issues which may arise in the new trial, we trust that if the pleadings and the evidence therein support the need for instructions on the issues of the statute of frauds, partial performance necessary to take a case out of the statute of frauds, and implied contract, they will be submitted to the jury.

■ On the issue of whether or not the trial court erred in failing to grant a judgment notwithstanding the verdict, Hausman has not with particularity indicated how the court erred in not granting the judgment notwithstanding the verdict. On the issue of whether or not the evidence was sufficient to justify the verdict when raised on an appeal from an order denying a motion for judgment notwithstanding the verdict, we have said:

"4. On motion for judgment notwithstanding the verdict, the evidence must be considered most favorably to the one in whose favor the jury returned a verdict. Such motion admits all inferences and conclusions which can reasonably be drawn from the evidence which are favorable to the party opposing the motion." *Linington v. McLean County*, Syl. ¶ 4, 146 N.W.2d 45, 48 (N.D.1966).

*See also Brinkman v. Mutual of Omaha Ins. Co.*, 187 N.W.2d 657 (N.D.1971), and cases cited therein at 662 to support it.

We are not convinced that this is an appropriate case to grant judgment notwithstanding the verdict.

For the reasons stated in this opinion, the order denying the motion for a new trial is reversed and the case is remanded for a new trial.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.