LORENZEN v. KEENAN et al. (No. 2400.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 26, 1924.)

1. Adverse possession ⬥85(2)—Evidence of award of land from state held admissible.

In suit to recover land, though plaintiff pleaded limitation title only, evidence of an award of the land from state was admissible to show inception of plaintiff's claim, where defendant was making an effort to show that plaintiff was without any claim or right as a basis for his possession.

2. Adverse possession ⬥113—Tax redemption receipt issued defendant by plaintiff held inadmissible.

In suit to recover land under claim of adverse possession tax redemption receipt issued to defendant by plaintiff, who was a tax collector, was inadmissible, where it was issued after suit was filed and plaintiff denied execution thereof.

3. Trial ⬥114—Counsel should refrain from improper language in argument.

Counsel should refrain from indulging in invectives and vituperative and opprobrious language in argument.

4. Trial ⬥313—Judge's communication with foreman of jury, held reversible error.

Judge's communication with foreman of jury, in a way not permitted by statute, after case had been submitted and jury was deliberating upon a verdict constituted reversible error, especially where foreman took advantage of occasion to permit other jurors to believe from what he reported that court had confirmed advice which he had already given jury that "Yes" meant for plaintiff.

5. Trial ⬥304—Reversible error for foreman to advise jury that judge said particular judgment would result from answer to a special issue.

It was reversible error for foreman to report to jury, after communicating with judge, in such way as to lead them to believe particular judgment would result from an answer to a special issue.

Appeal from District Court, Lamb County; R. C. Joiner, Judge.

Suit by T. M. Keenan against Thomas Lorenzen and another. Judgment for plaintiff, and the named defendant appeals. Reversed and remanded.

Oxford & Oxford and M. J. Baird, all of Plainview, for appellant.

Williams & Martin, of Plainview, for appellees.

JACKSON, J. This suit was instituted in the district court of Lamb county by the plaintiff, T. M. Keenan, against the appellee, Thomas Lorenzen, and the C. C. Slaughter Company, a corporation, defendants, to recover 160 acres of land in Lamb county, Tex., described as the northwest one-fourth of section 15, block S—4.

Plaintiff pleaded that he was in possession of the land, and alleged the statute of limitation of 10 years by which he claimed to have matured and perfected his title. He alleged that the defendants were setting up some kind of pretended claim to the land, the exact nature of which was unknown to him, but that such claim was inferior to plaintiff's right and ownership, but that it constituted a cloud upon his title.

Defendant C. C. Slaughter Company filed a disclaimer, and the defendant Thomas Lorenzen answered by general demurrer, general denial, and plea of not guilty. Upon a trial before a jury, after defining "peaceable possession" and "adverse possession," the court submitted to the jury this one issue:

"Has the plaintiff had and held peaceable and adverse possession of the land in controversy, using and enjoying same for any period of 10

consecutive years since April 7, 1908, and prior to September 15, 1923, the date of filing of the suit herein?"

The jury answered this issue "Yes," and judgment was entered for plaintiff, decreeing him the land, and the defendant Thomas Lorenzen has appealed.

[1] Appellant's first assignment is that, inasmuch as the appellee pleaded a limitation title only, the trial court committed error in allowing the introduction in evidence by appellee of an award of the land from the state of Texas to him, dated in 1903. The record discloses that this testimony was not offered as proof of title, but to show the inception of plaintiff's claim, and was admitted because defendant was making an effort to show that the plaintiff was without any claim or right as a basis for his possession. In this, we think there was no error.

[2] Appellee's second assignment urges error in the refusal of the trial court to permit the introduction in evidence by appellant of a tax redemption receipt purporting to be issued to appellant by appellee, who was tax collector of Lamb county. The purported receipt was issued after the suit was filed in the district court, and the witness, plaintiff, denied the execution of the redemption receipt, and it was excluded by the court. Under these conditions the receipt was not admissible.

[3] Appellant, in his third assignment, urges that the court committed error in permitting appellee's attorney, in his argument to use language set out in the bill of exceptions. The language used and the argument were improper, and counsel should refrain from indulging in invectives and vituperative and opprobrious language, but as this will not likely occur in another trial we deem it unnecessary to pass on this assignment.

Under proper assignment appellant presents the proposition that the court committed reversible error in communicating with the foreman of the jury after the case had been submitted to the jury for its consideration; that any communication had between the trial judge and the jury, except in open court, and as permitted by statute, is reversible error, regardless of whether the verdict of the jury is affected by such communication or not.

This assignment was set up by appellant in his motion for a new trial, and evidence heard thereon by the court, and the motion for a new trial refused. The learned trial judge made the following statement relative to the facts regarding the communication with the foreman of the jury:

"After I came back from dinner, Mr. Brown and I came over to the courtroom; I don't remember whether he came into the courtroom at the same time I did or not; I mean the courthouse, instead of the courtroom. When I got into the front room of the building down-stairs, Mr. Rogers, the deputy sheriff, said the jury wanted to see me. Mr. Rogers opened the door, but a Mr. Eby appeared at the door and said that they wanted to ask me whether or not the answering of the question 'Yes' meant for the plaintiff, and 'No' for the defendant, and I said to them, 'By reading your question and instructions as to the burden of proof will answer that question.' He turned right around and left and I went the other way, and that was all that was said. That was in the county courtroom. Court was in session, but not in the courtroom; in other words, court had not adjourned; the whole room was full of people, and I don't know whether the attorneys were there or not; there were a number of people standing around down there."

[4] We accept this statement of the learned trial judge as completely revealing the communication he had with the foreman of the jury and the circumstances under which it occurred. The facts disclosed in the statement completely vindicate the trial judge from any personal reflection, because manifestly the communication was without any intent or purpose to influence the jury. We are convinced that no injury could have resulted to appellant by this communication of the judge with the foreman of the jury, but for the subsequent conduct of the juror to which we will later advert. Does such a communication between the trial judge and the juror, as the above facts disclose, independent of the subsequent conduct of the juror, constitute reversible error?

In the case of the Texas Midland Ry. Co. v. Byrd, by the Supreme Court of this state, reported in 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137, the facts disclose that during the deliberation of the jury, "the court had more than one conference with the foreman of the jury, which was not in open court with all of the jury present"; that plaintiff in error made a motion for new trial in which he set up the misconduct of the court and jury after the case had been submitted. Evidence was introduced on both sides on the hearing of the motion for a new trial, and the motion was overruled. Chief Justice Gaines, speaking for the Supreme Court, says:

"Counsel for the defendant in error invoked the rule that where the evidence showing misconduct of the jury is contradicted on the other side, and the court has passed upon it, and held it is not sufficient to show misconduct in the action of the court in overruling the motion, it will not be held to be error. But in signing the bill of exceptions upon overruling the motion the court pended to the bill a statement of the grounds upon which it acted, and this statement shows the fact that the court did so confer with the foreman of the jury was true. And this much we can therefore say was clearly established, and we think it was such improper conduct on the part of the court as requires the motion to have been granted. It is not a question simply of the misconduct of the jury, and of whether such misconduct would probably influence the verdict [of the

jury], but it was a question of the misconduct of the court, and the propriety of allowing a judgment to stand after such action on the court's part. It seems to us that in deciding this question we are not required to enter into a discussion of the question of how a conference between the judge and the foreman [of the jury] would have affected a verdict if at all."

The court then quotes, as they are now numbered, articles 1959 to 1962 of V. S. T. C. S. inclusive, and then proceeds:

"It is thus seen that the statutes very carefully provide the manner in which the court shall confer with the jury, and that he shall give no instructions, or confer with them in any manner, except in open court. The obvious purpose of this [statute] is that counsel may be present and see that the conference is proper, and, if not, may take a bill of exception to the action of the court. It seems to us, therefore, that it is error for the judge to confer with the jury in any other manner than that prescribed by law, and that if he does his judgment on that account ought to be reversed."

In support of his opinion, Chief Justice Gaines cited Sargent v. Roberts, 1 Pick. (Mass.) 337, 11 Am. Dec. 185; Read v. Cambridge, · 124 Mass. 567, 26 Am. Rep. 690; Watertown Bank & Loan Co. v. Mix, 51 N. Y. 558; Fish v. Smith, 12 Ind. 563; Crabtree v. Hagenbaugh, 23 Ill. 349, 76 Am. Dec. 694; Moody v. Pemeroy, 4 Denio (N. Y.) 115; Kirk v. State, 14 Ohio, 511; Bunn v. Croul, 10 Johns. (N. Y.) 239; State v. Smith, 6 R. I. 33.

In Holman Bros. v. Cusenbary et al. (Tex. Civ. App.) 225 S. W. 65, appellants assigned as error the action of the court in communicating with the jury, and made such error one of their grounds for a new trial. The trial court filed conclusions of fact, in which he states:

"That after the retirement of the jury the court was called upon by them to explain special issue No. 1, and the effect of an affirmative answer thereto and did so, but would not have done so, but for the fact that he was then of the opinion that the testimony was not conflicting upon that point, and was all in support of an affirmative answer, and then of the opinion that peremptory instruction should have been given in favor of the defendants, because the issue embraced in said special issue No. 1 was proven by the defendants, and likewise proven by the testimony of the plaintiffs, and in the opinion of the court is decisive of the case in favor of the defendants."

Chief Justice Fly, speaking for the court says:

"Appellants objected to the court's action as evidenced in their motion for new trial. We are not informed what advice was given to the jury by the trial judge, nor does it matter, for his advice to the jury after retirement was illegal, and is sufficient to reverse the judgment, whether it affected the verdict or not."

This rule has been considered by the Courts of Civil Appeals of this state in several cases. In Wichita Falls Compress Co. v. W. L. Moody et al., 154 S. W. 1043, by the San Antonio court, writ of error was granted by the Supreme Court, among other grounds "because of communication between court and jury, in violation of statute." See Smith v. Harris, 252 S. W. 836. In the case of Corpus Christi Street & Interurban Ry. Co. v. Kjellberg, 185 S. W. 430, the San Antonio court refused to follow its holding in Wichita Falls Compress Co. v. Moody, supra, but followed the rule of the Supreme Court in the case of the Texas Midland Ry. Co. v. Byrd. The rule is also affirmed in the case of Smith v. Harris, 252 S. W. 836, and supported by the citation of many authorities.

Appellee cited Whitaker et al. v. Browning et al. (Tex. Civ. App.) 155 S. W. 1197, and article 2021 of the Revised Statutes of 1911, to show that it is incumbent upon the complaining party to show probable injury. Article 2021 was enacted in 1905, and Texas Midland Ry. Co. v. Byrd was decided in 1909, in which case the record shows that counsel for defendant in error there invoked the rule relied on by appellee in the instant case.

This proposition is sustained by the decisions in a great many foreign jurisdictions, and in addition to those cited by Chief Justice Gaines in the case of Texas Midland Ry. Co. v. Byrd, supra, we note the following: North Dakota v. Murphy, 17 N. D. 48, 115 N. W. 84, 17 L. R. A. (N. S.) 609, 16 Ann. Cas. 1133 and notes; Havenor v. State, 125 Wis. 444, 104 N. W. 116; Hurst v. Webster Mfg. Co., 128 Wis. 342, 107 N. W. 666; Abbott v. Hockenberger, 31 Misc. Rep. 587, 65 N. Y. S. 566; Hudson v. Stearns Co. Ct., 75 N. Y. S. 735. In Havenor v. State, supra, the jury sent a communication to the presiding judge, through the bailiff, requesting him to come and answer some inquiries concerning the case; the judge went to the doorway of the juryroom where the jury was deliberating, and a juror propounded some questions to him. In reply the court informed them that he could not answer the questions, but that the instructions given them fully covered the subject of their inquiry, and that some of the matters inquired about were excluded from their consideration by these instructions. The court also offered to read part of the instructions, or to submit to them the charge given. In passing upon this assignment, the Supreme Court of Wisconsin says:

"Whenever such communications were had, though they were not prompted by improper motives, and though they may not have influenced the jury in arriving at their verdict, still they are generally treated as in themselves sufficient ground for setting aside the verdict rendered, for the reason that no party

should be subjected to the burden of an inquiry before the court, regardless of whether or not its conduct in this respect, or that of its officers or that of the opposing party, has tended to his injury."

In Hurst v. Webster Mfg. Co., supra, the court says:

"The record shows that after the jury had been deliberating for some time on their verdict, they sent a written request to the judge that they might have the pleadings and papers in the case; thereupon the judge, in the absence of the parties and their counsel, went to the juryroom, and, standing in the open doorway, told the jury he could not grant their request, but would inform them concerning any undisputed figures or amounts, and in reply to questions told the jury the number of feet claimed by the plaintiff and admitted by the defendant and the amount of the payments made. This conduct of the judge is assigned as error, and we are compelled to agree with this contention. The subject of such communications to the jury has been recently fully considered by this court, in the case of Havenor v. State, 104 N. W. 116, and the rule laid down that no communication should be had between the judge and the jury after submission of the cause except in open court. * * * All court proceedings should be in the open. * * * There is safety in no other rule."

In Hudson v. Stearns, supra, the justice before whom the case was tried makes the following statement:

"That after deliberating for some time the jury called for the justice; the door of the juryroom was then opened by the constable, who was present; neither the plaintiff nor defendant nor their counsel was notified, and neither of them was present, nor did they, or either of them, consent; then the foreman of the jury asked me if the costs could be divided and placed on both parties; I, in reply said to him, 'No, that the costs followed judgment always in a civil action,' and I then withdrew."

On this issue the court says:

"It is urged that the instructions given to the jury were correct, and no harm was done to the appellant. It may be that in this particular case no harm was done (as the instructions seem to have been correct), and the verdict might have been the same had no such communication taken place. But the inauguration of a rule of law that would allow communication between a judge, magistrate, or other officer beyond what is now authorized by statute and the jury during their deliberation, and in the absence of and without the consent of the parties to the action, would be to inject into our system of conducting trials a practice not only open to suspicion, but one that might be destructive of the interests of parties and the cause of justice."

From these decisions we conclude that it is error which requires a reversal of the case for the trial court, in any way not per-

mitted by statute, to communicate with the jury after a case had been submitted, and it is deliberating upon a verdict. This is a rigid rule, but we think a wholesome one, and the wisdom of enforcing it is clearly revealed and emphasized by the conduct of the foreman of the jury subsequent to the conversation with the court. The testimony of the jurors show that they desired to learn before writing and returning their verdict, what the result would be if the jury answered the issue submitted "Yes," and what it would be if they answered "No." Some discussion arose among the jurors what the result would be if the issue was answered "Yes" and if it was answered "No." The foreman and some others advised that "Yes" meant for the plaintiff and "No" for the defendant. Some of the jurors were uncertain and requested the foreman to consult the trial judge; after doing so he reported to the jury that he had conferred with the judge, and "we were right, 'Yes' means for the plaintiff, and 'No' for the defendant." The verdict was then written and brought into court. Whether the foreman unintentionally misinterpreted the conversation with the judge, or purposely misrepresented what occurred, he took advantage of the occasion of his communication with the court to permit the other jurors to believe from what he reported that the court had confirmed the advice which the foreman had already given the jury, that "Yes" meant for the plaintiff. To avoid furnishing an occasion for such conduct by a juror affords one of the reasons for the inflexibility of the rule.

[5] Plaintiff also assigns error on the misconduct of the jury, and what we have said under the foregoing assignment, we think sufficiently sets out the facts. It is uncontroverted that the foreman of the jury, assisted by others, advised and informed those of the jury who were uncertain that the result of answering the special issue submitted in the affirmative would be a judgment for the plaintiff; the effect of answering such issue in the negative would be in favor of the defendant. The foreman then communicated with the court and reported to the jury, in a way which they understood, untrue though it was, that the trial judge had advised him that "Yes" meant for the plaintiff. One of the jurors testified that if "No" had meant for plaintiff, he would have favored returning a verdict in the negative. It is reversible error for an attorney or judge to advise the jury what judgment will result from an answer to a special issue. The effect of the misconduct of the foreman was to have the court tell the jury the result that would follow answering the issue "Yes" or "No." This was error which requires a reversal of the case.

Reversed and remanded.