## HUMBLE PIPE LINE CO. v. KINCAID et al. (No. 8195.)

Court of Civil Appeals of Texas. San Antonio. May 1, 1929.

Rehearing Granted June 12, 1929. Rehearing Overruled July 3, 1929.

T. M. West and Nelson Lytle, both of San Antonio, and I. L. Martin, of Uvalde, for appellant.

K. K. Woodley, of Sabinal, and Goeth, Webb & Goeth, of San Antonio, for appellees.

COBBS, J. Appellee E. B. Kincaid, for himself and as next friend for E. B. Kincaid, Jr., joined by his wife, Lucille Kincaid, brought this suit against the Humble Pipe Line Company for damages occurring to each of these appellees, by reason of injuries sustained as a result of a collision between a truck operated by appellant's employé and an automobile owned and driven by E. B. Kincaid, and in which automobile Lucille Kincaid and E. B. Kincaid, Jr., were riding at the time of the collision.

Appellees alleged in their joint petition that E. B. Kincaid was damaged in the sum of $8,233.44, that Lucille Kincaid was damaged in the sum of $10,000, and E. B. Kincaid, Jr., in the sum of $10,000. They alleged that their damages were caused by the negligent driving of the appellant's truck, as follows:

"(a) Because said truck was driven without sufficient lights.

"(b) Because said truck was driven at a reckless rate of speed.

"(c) Because said truck was driven down the middle of the road without sufficient room to permit vehicles to pass.

"(d) Because the driver did not apply his brakes in time to stop the truck.

"(e) Because appellant's driver did not drive on his right hand side of the road."

Each appellee also alleged his particular damages and prayed for his own relief.

Appellant promptly filed its plea of privilege, alleging its place of residence or domicile was in Bexar county, and that it had no agent in Uvalde county, the county in which the suit was brought. Appellant's plea of privilege was filed on March 24, 1928, and on March 29, 1928, appellees filed their controverting affidavit. The court set the hearing of the plea of privilege at Uvalde, Tex., at 2 o'clock p. m. April 12, 1928.

The controverting plea, with the notice of the hearing, was served on T. M. West, one of the attorneys of record for appellant, on April 3, 1928. At the time set for the hearing, the parties appeared before the court, by their attorneys, and appellant did not urge any objection as to the sufficiency of the notice served upon it in connection with the matter of the plea of privilege, but no hearing was had upon the plea of privilege at this time, as it was agreed by the attorneys for appellant and appellees that the matter of hearing upon appellant's plea of privilege should be continued, without prejudice to said plea, to the next succeeding term of the district court of Uvalde county; and said hearing was thereupon by the court continued.

On the 15th day of October, 1928, being the next succeeding term of court, appellant's plea of privilege and appellees' controverting plea were heard by. the court, and, after hearing the evidence, appellant's plea was overruled.

No objection or protest was made by appellant on the 12th day of April, 1928, at the action of the court in recognizing the agreement of counsel to the postponement of the hearing on the plea. Nor was there any objection made by appellant, on October 15, 1928, when the cause was called for hearing, to the sufficiency or manner of service upon it of the controverting plea and notice of the time for hearing the said plea of privilege on April 12, 1928, the day first named for the hearing of the plea.

Notice the statute (Rev. St. 1925) article 2008: A hearing shall not be had "until a copy of such controverting plea, including a copy of such notation thereon, shall have been served on each defendant, or his attorney, for at least ten days exclusive of the day of service and the date of hearing, after which the court shall promptly hear such plea of privilege and enter judgment thereon."

The only purpose of this statute is to give 10 days' notice of the hearing of the plea to the defendant. When that is done, the provisions of the statute are complied with. It is undisputed that notice "for at least ten days exclusive of the day of service and the date of hearing" was given. Here the parties *agreed for a hearing* to be had at the next term of court, which was done.

Really, it was not necessary in this case to file a controverting affidavit to reply to appellant's plea of privilege, nor was it necessary to serve any character of notice of a contest. The trial court could have properly overruled the plea without statutory notice upon the filing by appellee of any appropriate plea challenging, as was done in this case, the ground set out.

The appellees resided in Uvalde county, where the alleged tort occurred.

In the case of Yates et al. v. State (Tex. Civ. App.) 3 S.W.(2d) 114, the court holds: "It is true that some early cases by the Courts of Civil Appeals held that, unless plaintiff controverted a plea of privilege under oath and within the time allowed by the statute, the Court was without jurisdiction to even determine the sufficiency of the plea of privilege, and must transfer the case; but recent decisions by all the Courts overrule those

cases, and hold that, unless plaintiff shall controvert the plea of privilege within the time prescribed, and as directed by the statute and under oath, the Court is without further jurisdiction over defendant on the venue question, except to hear the plea of privilege, and, if it is found sufficient as required by the statute, to transfer the cause in accordance therewith. So it is clear, under the recent decisions cited by Appellants, supra, that the law is now settled that the trial court must hear and determine, not only whether the plea of privilege is in due form and timely filed, but must also determine, where the issue is raised by some authorized pleading, the legal sufficiency of the plea of privilege as tested by the law controlling the venue of the particular kind or character of suit pending; that is, where the legal sufficiency of a plea of privilege is contested by appropriate pleadings, such as a demurrer thereto, and the issue or question raised is one determinable solely from the allegations of the plea itself and from the allegations of plaintiff's petition as to the nature, kind, or character of suit pending, the issue or question so raised is therefore one of law, which the Court has jurisdiction to determine, even though no controverting plea as required by the statute be filed to the plea of privilege. In other words, the matters or things which the statute requires to be controverted under oath in a plea of privilege are the matters or things of fact alleged, and not the issues or questions of law raised by the undisputed facts alleged, or facts which are shown by the plaintiff's pleadings to be untrue.

A suit for tort or trespass may be brought in the county where committed. Rev. St. 1925, art. 1995, § 9; Campbell et al. v. Wylie et al. (Tex. Civ. App.) 212 S. W. 980; Chatham Machinery Co. v. Smith (Tex. Civ. App.) 44 S. W. 592; Aldridge v. Webb, 92 Tex. 122, 46 S. W. 224.

However, the important question arising here grows out of the demand that notice of the hearing had not been served "at least ten days exclusive of the day of service and the date of hearing, after which the court shall promptly hear such plea of privilege and enter judgment thereon." Appellant not only had ten days' notice, but several months' notice, before the court heard such plea of privilege and entered judgment thereon.

When the case was first called for a hearing, on April 12, 1928, all the parties agreed that the hearing of the plea of privilege be postponed, without prejudice, to the next term of court, and it was. Appellant has not only had all the notice provided for, but it has waived all claims to further notice. Upon April 12, appellant appeared before the court in answer to the notice served on it, and by agreement continued the case to the next succeeding term of the court that heard it, on October 15, 1928.

There is nothing in the contention that the court ought to or should disregard the agreement of continuance, for it is as much a part of the record as any other thing in it, and it.is not denied that the hearing was continued by agreement.

We do not think there is anything in appellant's proposition that it was error to permit the father, the mother, and their minor son to join together in the one suit against the owner of the automobile alleged to have caused the collision.

The law abhors a multiplicity of suits and a multiplicity of parties and causes of action. Here it is but one accident, and as to it the proof is the same. We can see no merit in the objection, and it is overruled. We see nothing comforting to appellant in Texas Mex. Ry. Co. v. Lewis et al. (Tex. Civ. App.) 99 S. W. 577, or the other cases cited by appellant, and the objection is overruled.

On the question of unavoidable accident, the proof shows that appellant was guilty of negligence. For instance, some of the witnesses testified that Kincaid tried to turn out, and, while so doing, his car skidded into the truck. Other witnesses show that the accident was caused by the appellant's truck being carelessly driven at and before the time of the accident. There was no such thing here as an unavoidable accident. The accident could not have been foreseen. Volume 20, p. 20, Ruling Case Law. The question of mental anguish to Mrs. Kincaid, on account of the injury to her husband and son, about which she testified, we do not think very material, for, if it could be separated, it would be subject to be controlled by the judgment of the court and diminished. However, the jury allowed no sum for mental anguish sustained by Mrs. Kincaid as a result of the injuries to her child.

In regard to the accident, E. B. Kincaid testified: "I was traveling slightly, probably, I don't know, about 15 miles there, until I got —I was getting ready to turn into my home, and I pulled out to the right of the road, and probably then, by that time, I was going, I know, not better than ten miles per hour, and I pulled out of the road to the right—Well, I pulled out of the road to the right, and my right front wheel was off the bank and my left one was on the edge of the gravel and my hind wheel was in the track and the left hind wheel was in the track that came down the center of the road, and this was where the truck hit me. I would judge that the approximate speed that this truck was traveling at that time was between 25 and 30 miles per hour. It was a truck with a trailer attached and had a bed on it; I do not know what the weight was, but it was a large truck. After the collision the truck that hit me stopped. I was about 100 feet from the place where my car was struck to where this truck stopped. I went back to the scene of this collision the following day. There were marks made by the wheels of this truck in the place

where it struck my car—there was a black mark where the wheel of this truck made, on the left hand side, from over slightly before it hit the car to where it had stopped. This black mark showed from the point where the truck struck my car backwards to a point about 90 feet, 90 feet from where my car was struck. I found marks there where the left rear wheel of my car dug into the gravel. About half way between the—about three feet from the edge of the gravel there was a mark where the wheel had dug into the gravel after the tire had been broken off—what was left of the wheel. Question: 'What position did you say your car was in at the time it was struck with reference to the middle of the road?' Answer: 'I was past the middle of the road on the right hand side.' I will state that the party who was driving the truck that struck my car made no attempt to turn out of the road before he struck me. This truck had two headlights, they were burning, but not very bright; well, they were dim. At the time of the collision the truck that struck me, that struck our car, was traveling in the middle of the road, but mostly on the left hand side of the road, and probably about two feet past the middle. They were past the middle of the road. The left hand side, or east side of the truck was on the east side of the center of the road. I was traveling on my own side of the road. I turned out in plenty of time for him to get by."

He further testified that he gave the truck more than half the road, and testified as follows: "I was not traveling on the left side of the road immediately before the collision; I was entirely on the right hand side of the road—my side. I turned out in plenty of time if the truck had turned and given me half of the road."

Mr. Kincaid's testimony is supported by other witnesses.

R. W. Smith, the driver of the truck that struck appellee's car, testified: "I was traveling about 14 or 15 miles per hour, and he was, I suppose, between 20 and 30 feet from me when I first applied my brakes; and seeing, as I came closer, I cut my truck to the right hand side of the road, the west side going south, until the right hand front wheel was off the gravel when he hit me, and after he hit me I changed gears and brought the truck to a complete stop, but first I pulled back up into the road. I stopped the first time something like four to six feet from the time he hit me. My right hand front wheel and my right hand driving wheel were off the gravel to the west side of the road. It was past the center of the road to the west side of the road, I would say, three and a half feet, where we hit each other, where his hind wheel hit my front part, the front part of my truck, where the collision occurred. It was west of the center of the road where his car hit the front end of my truck."

The accident occurred upon the Sabinal-Utopia road, which was a country road being graveled in the center, the gravel being 15 feet wide and having a 2-foot dirt shoulder on each side of the gravel. There was other testimony on the question. The jury found that the driver of defendant's truck failed to apply his brakes and stop the truck in time to avoid a collision with plaintiff's car, that such failure was negligence, and that such negligence was the proximate cause of the collision.

The jury also found that the driver of defendant's truck, instead of turning his truck to the right, crowded plaintiff's car and did not give plaintiff half of the road, but continued traveling down the center of the road and on the left side thereof, and that such manner of operating the truck constituted negligence, and that such negligence was the proximate cause of the collision. Texas City Transp. Co. v. Winters (Tex. Civ. App.) 193 S. W. 366; Rowan v. Hodges (Tex. Civ. App.) 175 S. W. 847; Bender v. Bender (Tex. Civ. App.) 187 S. W. 735; American Glycerin Co. et al. v. Kenridge Co. (Tex. Civ. App.) 295 S. W. 633; Wichita Falls Co. v. Craig (Tex. Civ. App.) 250 S. W. 733; 20 R. C. L. p. 20; Boyles v. McClure (Tex. Com. App.) 243 S. W. 1080.

Clearly Kincaid is entitled to recover the reasonable value of time lost by him from his business on account of the wrongful acts of appellant; likewise for hospital charges and for doctors' services, and all other expenses shown to have been caused by the accident, such as nurses' charges, drug bills, etc., in a reasonable amount. The jury found that $900 was the amount "reasonably and necessarily incurred by plaintiff, E. B. Kincaid, for hospital, doctors, nurses, drug bills and expenses in the treatment of himself, his wife and son for the injuries sustained" in said collision.

Appellant's propositions VI and VII, as well as the statements and arguments following, will not be considered, because they are based upon assignments of error wholly insufficient. Rule 26 of Court of Civil Appeals Rules; article 1844, Rev. St. 1925; Tyler County State Bank v. Shivers (Tex. Civ. App.) 281 S. W. 264.

Complaint is made that the court erred in permitting testimony in regard to insurance. That occurred in this way: The question was asked, "Was there an examination made at any time, of your own knowledge, by Dr. Nixon for the Insurance Company?" Upon objection, the question was withdrawn and the witness not permitted to further answer the question, and the court at once instructed the jury not to consider it. We can perceive of no harm done, and the proposition is overruled.

Question No. 4, submitted by the court to the jury, was, "Do you find from the evidence that said truck was being driven down the middle of the road and without sufficient

room to its left for approaching cars to pass on said road?" The jury answered, "No." Issue No. 10: "Do you find from the evidence that the driver of the truck instead of turning his truck to the right, crowded plaintiffs' car and did not give plaintiff his half of the road and on the left side thereof?" The jury answered, "Yes." Special Issue No. 7: "Do you find from the evidence that the driver of the truck failed to apply his brakes and stop his truck in time to avoid a collision with plaintiff's car?" The jury answered, "Yes." We perceive no error in the charge, but think it proper.

We have carefully examined all the errors assigned, propositions of law urged, but, finding no error that causes a reversal, the judgment is affirmed.

### On Motion for Rehearing.

SMITH, J. Appellant's motion for rehearing should be granted, and the judgment reversed and the cause remanded.

■ Appellant pleaded the defense that the collision was the result of unavoidable accident; that is to say, that it could not reasonably have been foreseen and avoided by either of the parties. The evidence under this defense was undoubtedly sufficient to raise the issue and to warrant the jury in resolving that issue either for or against that defense. The collision occurred in the nighttime upon a somewhat remote country road. The lights on one of the vehicles were dim; those on the other bright. The darkness, the lateness of the hour, the condition of the road rendered it difficult for the drivers to estimate the speed or location in the roadway of the approaching cars, confusing each as to the purpose or probable course of the other. Each driver testified that he was on his right and the other on the wrong side of the road, and assumed the other would pull over to the proper side. Appellee was in the process of pulling over to his right, and succeeded in getting the front of his car out of the way of the other, which caught his tardy left rear wheel. Appellee testified that, if he had made this attempt a little sooner, he would have gotten into the clear, and there was some evidence that his rear wheels skidded into the path of the other vehicle, which is easily conceivable under the peculiar facts of the case. This group of facts, together with others not necessary to set out, if found by the jury to be true, would have warranted a finding that the accident was unavoidable, and appellant's request that this issue be submitted to the jury should have been granted. It was refused however.

■■ It will not do to say, in support of the refusal to submit the issue of unavoidable accident, that the jury, having found that the collision proximately resulted from the negligent failure of the appellant's driver to stop his truck in time to avoid the accident, could

or would not have found that the accident was unavoidable. For the jury may have felt that they were obliged to find a reason for the collision by means of some one of the issues submitted to them, and, being denied the privilege of finding it to have been unavoidable under the peculiar circumstances of the case, they may have hit upon the issue of failure to stop as the next most probable cause. It is the settled law of this state that a defendant is entitled to an affirmative submission to the jury of any fact or group of facts pleaded by him and supported by material evidence, which, if found true, would exculpate him from liability, and he may not be deprived of this right through an adverse finding upon some other issue the answer to which would render him liable. Dallas R. Co. v. Speer (Tex. Com. App.) 299 S. W. 507; Northern Texas Traction Co. v. Woodall (Tex. Com. App.) 299 S. W. 220; Montrief v. Bragg (Tex. Com. App.) 2 S.W.(2d) 276. Appellant's fourth proposition of law, in which this question is appropriately raised, is sustained.

■ Appellees recovered a substantial amount of damages for expenses incurred by them as a result of the accident, without pleading or evidence that such expenses were necessarily incurred or reasonable in amount. Such showing is essential to recovery for damages of this nature. This conclusion requires that appellant's sixth proposition be sustained.

■ After the jury had received the case, and during their deliberation thereon, they returned to the courtroom for further instructions. When so assembled in open court, in the presence of counsel, the foreman orally asked the court a question of law, which the court refused to answer, directing the jury to be governed by the charge as originally given; whereupon one of the jurors other than the foreman orally asked the court, "What does the court mean by the term 'at the time of the collision,' does that mean at the time of the 'impact'?" to which the court orally replied, "Yes;" whereupon "to the action of the court in answering the question of the juror, orally, and which question was a question not in writing, and which answer of the court was not given in writing, and because the matter was fully covered by the court's charge, as given, the defendant then and there in open court excepted." The matter is properly presented in appellant's eleventh proposition.

It is provided in article 2198, Rev. St. 1925: "After having retired, the jury may ask further instructions of the court touching any matter of law. For this purpose they shall appear before the judge in open court in a body and through their foreman state to the court, either verbally or in writing, the particular question of law upon which they desire further instruction; and the court shall give such instruction in writing, but no instruction shall be given except in conformi-

ty with the preceding rules and only upon the particular question on which it is asked."

The procedure described was in contravention of the statute in two respects; that is to say, the question presented to and answered by the court was not stated by the foreman, but by an individual juror other than the foreman, and the court's instruction in answer thereto was not given in writing, as affirmatively prescribed by the statute, but orally, as expressly prohibited by the concluding provision of the statute. The instruction related to a material phase of the case, and, being given in a manner expressly prohibited by the statute, undoubtedly constituted error. Floyd Parker v. M. T. Bailey (Tex. Com. App. No. 1044—5240) 15 S.W.(2d) 1033.

The following special issues, among others, were submitted to the jury:

No. 4. "Do you find from the evidence that said truck was being driven down the middle of the road and without sufficient room to its left for approaching cars to pass on said road?"

No. 10. "Do you find from the evidence that the driver of the truck, instead of turning his truck to the right, crowded plaintiff's car and did not give plaintiff his half of the road, but continued traveling down the center of the road and on the left side thereof?"

The jury answered issue No. 4 in the negative, and No. 10 in the affirmative. It is obvious that the two issues are identical in effect, and that they could not be consistently answered diversely. By answering the first in the negative, the jury found that appellant's truck was not being driven down the center of the roadway, and that it gave sufficient roadway to its left for appellee's car to safely pass. As there was no pleading or evidence that the truck was being operated to its left of the center of the roadway, this finding that it was not on the center completely exonerated appellant from any charge that it encroached upon appellee's side of the roadway.

Under issue No. 10, quoted above, the jury found that, "instead of turning his truck to the right," appellant's driver "crowded plaintiff's car and did not give plaintiff his half of the road" and "*continued* traveling down the center of the road and on the left side thereof." The two findings are therefore in direct and obvious conflict, rendering both ineffectual. The issue involved was clearly raised by the evidence, and the parties were entitled to have it definitely and consistently determined.

Many other questions are presented by appellant, but it is hoped that, by another trial upon clarified and simplified pleadings, those questions may be eliminated from the case. Appellant's propositions, other than those discussed, therefore, will be overruled, not upon their merits, but because they have become immaterial to the appeal, in view of reversal upon other grounds.

Appellant's motion for rehearing is granted, and the judgment is reversed, and the cause remanded.

COBBS, J. This record was assigned by the judges to me to write the opinion of the court, which I did, and which opinion I now adhere to.

Article 1859, Rev. St. 1925, provides: "There shall be no reversal on appeal or writ of error, nor shall the same be dismissed for want of form, provided sufficient matter or substance be contained in the record to enable the court to decide the cause upon its merits." This article refers to the action of the court in reversals.

This case should never have been reversed. It is a plain and simple damage suit, where one person ran his truck negligently into another man's automobile and injured him. It is a case in which the negligence is obvious, and where there is "sufficient matter or substance * * * contained in the record to enable the court to decide the cause upon its merits."

The court submitted very fully to the jury the law in reference to traveling the road by motorcars, as follows:

"Question No. 1. Do you find from the evidence that the defendant's truck was, at the time of the collision, driven at a rapid and reckless rate of speed?

"Answer 'yes' or 'no.' (Answer—no.)

"Question No. 2. If you have answered the foregoing question 'yes,' then state whether such driving of the truck was negligence, as that term has been defined.

"Answer 'yes' or 'no.'

"Question No. 3. Was such negligence, if any, the proximate cause of the collision?

"Answer 'yes' or 'no.'

"Question No. 4. Do you find from the evidence that said truck was being driven down the middle of the road and without sufficient room to its left for approaching cars to pass on said road?

"Answer 'yes' or 'no.' (Answer—no.)

"Question No. 5. If you have answered the foregoing question 'yes,' then state whether or not such operation of the truck was negligence, as that term has been defined to you.

"Answer 'yes' or 'no.'

"Question No. 6. Was such negligence, if any, the proximate cause of the collision?

"Answer 'yes' or 'no.'

"Question No. 7. Do you find from the evidence that the driver of the truck failed to apply his brakes and stop his truck in time to avoid a collision with plaintiff's car?

"Answer 'yes' or 'no.' (Answer—yes.)

"Question No. 8. If you have answered the foregoing question 'yes,' then state whether or not such failure to apply his brakes and stop his truck was negligence.

"Answer 'yes' or 'no.' (Answer—yes.)

"Question No. 9. Do you find from the

evidence that such negligence, if any, was the proximate cause of the collision?

"Answer 'yes' or 'no.' (Answer—yes.)

"Question No. 10. Do you find from the evidence that the driver of the truck, instead of turning his truck to the right, crowded plaintiff's car and did not give plaintiff his half of the road, but continued traveling down the center of the road and on the left side thereof?

"Answer 'yes' or 'no.' (Answer—yes.)

"Question No. 11. If you have answered the foregoing question 'yes,' then state whether or not such manner of operating the truck was negligence.

"Answer 'yes' or 'no.' (Answer—yes.)

"Question No. 12. Was such negligence, if any, the proximate cause of the collision?

"Answer 'yes' or 'no.' (Answer—yes.)

"You are instructed that the burden of proof is upon the plaintiffs to establish the affirmative of each and all of the foregoing questions by a preponderance of the evidence.

"Question No. 13. Do you find from the evidence that the plaintiff, E. B. Kincaid, in approaching the defendant's truck, did not turn his car to the right and did not keep the same on the right side of the road and did not give to defendant's truck its half of the road, but continued traveling on his left side of the road until striking defendant's truck?

"Answer 'yes' or 'no.' (Answer—no.) "

We do not copy the questions after No. 13, as they are not material here.

It is true that appellant requested the submission of a so-called unavoidable accident issue, then asked the court in connection with the special issue to instruct the jury "that an unavoidable accident" is such an unforeseen event, misfortune, or act as is not the result of any negligence or misconduct of either party. Such is error, it was directly adverse to the facts and the findings of the jury. The jury found that the defendant's truck was driven at a rapid and reckless rate of speed, and that the driving of the truck was clearly negligence. It was the proximate cause of the collision, and the driving of the truck was negligence. They found that it was driven in the middle of the road, without sufficient room to its left for approaching cars to pass on said road. They found the driver of the truck failed to apply his brakes and stop his truck in time to avoid a collision with plaintiff's car.

The questions and answers show there was no fact stated that made pertinent the issue of an unavoidable accident, and, when that issue was submitted, it seems to be in keeping with other issues—catching at straws. Such an issue can be introduced in every case of an automobile accident. The rule is not correctly stated when it is said a defendant is entitled to have submitted every fact pleaded which if found true would exculpate him from liability and may not be deprived of this right through an adverse finding upon some other issue, the answer to which would render him liable. We understand the rule to be that such defendant is entitled to have any material issue of defense submitted, but that theory of the law did not justify, as shown above, the submission of an issue already found by the jury.

The pleadings and the evidence clearly show the reasonable and substantial amount of damages for expenses incurred as the result of the accident. They were sufficiently plead and proved.

It is folly to say that any harm or error resulted by the act of the jury, coming into the courtroom all together and one of the members asking the court, "What does the court mean by the term, at the collision, does that mean at the time of the impact?" which the court answered, "Yes."

What is the difference, under the circumstances, between the oral conversation and a written question? It is too plain that no harm was done nor error committed, and I find no words to express my opinion.

It takes a better scholar than the writer to distinguish the claimed conflict in the answers to No. 4 and No. 10. In No. 4 it is asked, Was the truck driven down the middle of the road and without sufficient room to its left for approaching cars to pass on said road? And in No. 10, it was asked, "Do you find * * * that the driver of the truck, instead of turning his truck to the right, crowded plaintiff's car and did not give plaintiff his half of the road, but continued traveling down the center of the road and on the left side thereof?" These charges harmonize. The first is with reference to appellant driving in the middle of the road, without reference to appellee, but No. 10 asks if defendant, "instead of turning his truck to the right, crowded plaintiff's car and did not give plaintiff his half of the road, but continued traveling down the center of the road and on the left side thereof."

Again reverting to an unavoidable accident, we adopt a part of appellee's argument:

"In the first place the very term 'Accident' according to its accepted legal definition conveys the idea of a happening or occurrence which could not have been foreseen. R. C. L. vol. 20, p. 20. If the occurrence could have been foreseen by a reasonably prudent person the happening was not an 'Accident.' In this case, the driver of appellant's truck, without doubt, could and should have foreseen the collision, no other conclusion can be logical, and the occurrence was not in any sense of the word an 'Accident,' but a collision resulting from some one's negligence, and that some one the jury found to be the driver of appellant's truck. It is not enough to say that because the driver did not think the collision would occur the same could not

have been foreseen by him, the possibility of a collision was foreseeable and because the truck driver involved did not believe the same to be probable does not alter the case. If the collision could have been foreseen, as undoubtedly this one could have been by a reasonably prudent person, it is not enough to say that it was not foreseen.

"The true test governing matters of this nature is set forth in the case of Wichita Falls Traction Co. v. Craig (Tex. Civ. App.) 250 S. W. 733, as follows: 'The rule is that, unless there is evidence tending to show that the accident in controversy, which is charged to have resulted from the negligence of the defendant happened from some unknown cause, or in a manner which cannot be explained, or under circumstances different from those relied on and constituting a part of plaintiff's case, and which circumstances rebut the charge of alleged negligence for which the defendant is responsible, then it is not incumbent upon the trial court to submit the issue of unavoidable accident as a defense, in addition to a proper submission of the issues of negligence and contributory negligence as to both parties to the suit.'

"In this case the issues of negligence and contributory negligence as to both parties were submitted to the jury. The evidence clearly shows that the collision could have been foreseen. That the injuries sustained by appellees were the proximate result of the negligence of the driver of appellant's truck. That the collision occurred by reason of a cause well known, namely: The negligent failure of appellant's truck driver to stop or give the appellees half of the road, and under circumstances as charged by appellees in their pleadings.

"This case to our mind is a perfect example of an automobile collision suit wherein the theory of unavoidable accident is not involved, the same being completely dispelled by the proven facts. * * *

"An examination of all of appellant's assignments of error, which are supposed to support its proposition number six, will reflect the fact that not a single one of said assignments attempts to state wherein the evidence is deficient. All of the assignments are fatally defective under the numerous authorities cited by appellees in their brief pages 35–36. If the assignments are defective, the proposition based thereon must fall, for there can be no valid proposition without a proper assignment upon which it must rest, and the proposition cannot aid or add to the defective assignment. All of this is settled law, and is supported by any number of authorities. And we do not believe that this Court has the right or authority to exercise any discretion in the matter, but is bound to overrule the assignments and propositions attempted to be thereon founded."

The writer cannot agree that there is anything here that "completely exonerated appellant."

A careful reading of this record convinces me more than ever that there is in it nothing to call for a reversal. The case was most carefully tried, and, independent of Rule 62a, should be affirmed on its merits.

I dissent from the majority opinion, and tender my original opinion and this as my dissent.