## KUYKENDALL et ux. v. JOHNSON FUNERAL PARLOR.

### No. 7558.

Court of Civil Appeals of Texas. Austin.

March 25, 1931.

Wright & Yowell, of San Angelo, for appellants.

Upton & Upton, of San Angelo, for appellee.

BAUGH, J.

Suit by Kuykendall and wife, plaintiffs below, against appellee for damages for the death of their minor son, killed at San Angelo, Tex., by an ambulance of appellee, while answering an emergency call. The jury found that the death resulted from an unavoidable

accident, judgment was for defendant, and plaintiffs have appealed.

Appellants present three contentions, none of which are sustained. The first is that there was no evidence on which to submit the issue of unavoidable accident, and that the finding of the jury thereon was against the undisputed evidence. The following facts appear: Main street in said city is 70 feet wide, and runs north and south. Harris avenue runs east and west across it. Their widths and relative positions are shown upon the accompanying map. A collision had occurred a few

witnesses testified. As is usually true, the testimony was not entirely harmonious. In testing its sufficiency to sustain the verdict, or as raising an issue to go to the jury, it is our duty to disregard the evidence adverse to the issue raised and consider only that favorable to such finding. Considering only the testimony favorable to the verdict, it was sufficient to show substantially the following: That at or near the point of the accident a car or truck was at the time moving eastward along East Harris avenue on the right-hand or south side of said street; that on the north

MAP SHOWING
INTERSECTION OF EAST HARRIS & MAIN
SAN ANGELO TEXAS·

moments before the accident in question, on East Harris avenue about three blocks east of Main street. One ambulance had responded to that call, coming north on Main to Harris, then turning east into East Harris avenue, proceeded to the place of collision, and in doing so had attracted the attention of numerous persons in that vicinity. Shortly if not immediately thereafter the second ambulance, operated by appellee, in responding to the same call, had come east on Harris avenue, crossed Main street, and was proceeding eastward along East Harris avenue, at a speed variously estimated at from 30 to 55 miles an hour, when it ran into and killed Stephen Edward Kuykendail, the 11 year old son of appellants. The collision occurred approximately in the center of East Harris avenue, at a point about 120 to 130 feet east of Main street.

 Numerous people, attracted by the first ambulance, saw the collision and many

side of said avenue near that point a car was parked near the curb; that the ambulance, driven by an experienced driver, was traveling near the center of the avenue; that three small boys, including the deceased, had been attracted by the passage of the first ambulance responding to the emergency call further east on Harris avenue, and were going in that direction; that, as appellee's ambulance approached, they undertook to run across from the north to the south side of East Harris avenue, looking east while doing so, at or near the point where Stephen Edward met his death; that the boy in front succeeded in crossing the street; that Stephen Edward, followed by his younger brother, after passing the center of East Harris avenue, and perhaps because of a moving car on the south side of that avenue, upon discovery of the approaching ambulance, undertook to run back to the north side of the street. His younger brother, who was behind him only a

few feet also turned back and reached the north side in safety. In the confusion resulting from the discovery of his perilous position, some testimony indicated that deceased turned back south again and dodged back and forth two or three times in the center of the street, while his companions on each side of the street cried warnings to him. The ambulance driver testified that he kept to the center of the street to avoid dangers from either side; that he watched only the street ahead of him and not the sidewalks on either side; that he never saw the boys until they suddenly appeared running across the street in front of him; that there were two of them only a few feet apart; that he applied his brakes and tried to swerve the ambulance so as to miss them. One witness who saw the collision also testified that the deceased became confused, dodged back and forth, and that the ambulance driver apparently applied his emergency brake and also dodged back and forth trying to miss the lad. While there was testimony sufficient to sustain a finding of negligence as to the rate of speed of the ambulance, and on the issue of failure of the driver to keep a proper lookout ahead, the above was clearly sufficient we think to raise the issue of unavoidable accident for the jury, and their determination of that issue is binding upon this court. Such tragedies are deplorable, but, with the development of modern rapid transportation, incident to our progress, unfortunately they too often occur.

■ Appellants' next proposition relates to the trial court's communication to the jury after the case had been submitted to them. It appears that the question arose in the jury room whether the speed laws and ordinances applied to ambulances, and that the jury returned to the courtroom and in open court, but in the absence of plaintiffs' counsel, one of the jurors, other than the foreman, asked the court "whether or not there was any ordinance covering the speed of ambulances." The jury had before making the inquiry agreed that this specific question should be asked the court. The court thereupon re-read to the jury the issue submitted to them as to whether or not the ambulance driver was "under all the facts and circumstances in this case and under the conditions existing at the time of the collision in question, negligent in driving said ambulance at the rate of speed you find he was driving same." He also read his definition of negligence. No objection was made to the issue submitted nor to the court's charge on negligence. Both were correctly and properly submitted.

A mere re-reading of the charge could not we think be construed as an additional instruction, nor was it given nor intended by the court as such. It was nothing more than they had already before them, and was then no more an answer to their inquiry than it was before the jury made it. It gave them no more information on the matter inquired about than if the court had merely referred them to the charge and instructed them to be guided thereby. We think article 2198, R. S., governing such matters, as its language indicates, contemplates "further instructions"; that is, instructions additional to or in explanation of those already given. If the court had, in the instant case, advised the jury orally that no further instructions would be given and that they must be guided in the matter inquired about by the charge as given, we think that there could be no possible harm done and no ground for complaint. That is effectually what occurred. In fact, the trial judge in his qualification of the bill of exception states that he orally advised the jury that he could not give them any more instructions than he had already given them.

While the courts have sought, through a rigid and in some cases all but a literal observance of all of the provisions of article 2198 concerning any communication made by the court to the jury, to preserve as sacred the right of trial by jury, we think that such enforced observance should not be permitted to become a reductio ad absurdum. We are fully aware of the importance and wisdom of the statutes and rules laid down by the courts in such cases as Texas Midland Ry. Co. v. Byrd, 102 Tex. 263, 115 S. W. 1164, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137; Parker v. Bailey (Tex. Com. App.) 15 S.W.(2d) 1033; Humble Pipe Line Co. v. Kincaid (Tex. Civ. App.) 19 S.W.(2d) 144, 148; Lorenzen v. Kernan (Tex. Civ. App.) 266 S. W. 839; and Baldwin v. Morton (Tex. Civ. App.) 19 S.W. (2d) 948, relied upon by appellants to sustain their contention. In each of those cases, and others passing upon the issue here presented, there occurred some act of the court in violation of the statute. Because of his position, influence upon, and control over, not only the trial itself, but the conduct and deliberations of the jury in their retirement, it may well be urged that the slightest instruction, intimation, or suggestion from the court might and probably would have its influence upon the action of the jury. This is doubly true where it relates to matters concerning which the jury is in doubt, or the court's conduct is of such character as would reasonably tend to influence or compel a verdict. Baldwin v. Morton, supra. It being the duty of the court to know the law and to adequately ward against such dangers, the Legislature has with propriety laid down an arbitrary rule as to his conduct, to the end that every action of the judge should be in open court, be regular and of record.

But, as to the conduct of the jury itself, composed of men aware neither of the exist-

ence of such rigid requirements nor' of their importance so far as they may be concerned, no such cogent reason obtains for a rigid observance of the provisions of the statute. Obviously the requirement that they should communicate with the court through their foreman was to the end that only information desired by the entire jury as such would be asked for, and that individual jurors, when the jury is brought into the court in a body, would not be permitted to solicit instructions as to the law on their individual theories of the case. But where, as in the instant case, the jury as a body desired instructions on a single point, agreed in the jury room upon the specific question to be asked, and that question was asked by another member of the jury while the foreman, who was not then known to the court, stood by and acquiesced, we think it would be carrying the rule to an absurdity to hold that the case must be reversed because the foreman, designated in the statute to do so, did not himself make the inquiry.

We find no misconduct on the part of the court in the matter. And whatever error there may have been in permitting a juror other than the foreman to state the question to the court, under the circumstances of this case at least, was patently and obviously harmless.

■■■■ The remaining proposition complains that the jury in their deliberations discussed questions of law and facts not in the case, but which influenced their verdict. Two jurors testified on motion for rehearing that the matter of whether the speed limit of ambulances was regulated by ordinance was discussed in the jury room on the issue of negligence, and that, after the court had re-read a part of his charge to them, they concluded that the question of speed went out of the case and that the ambulance driver did all he could to avoid the collision. One also testified that the jury were of the opinion that ambulances had been driven too fast upon the streets of San Angelo (one of the jurors having formerly been an ambulance driver) for the past ten years, but that in the instant case the driver was not running any faster than ambulances usually ran under such circumstances.'

We do not think this amounted to misconduct nor to receiving testimony in the jury room. While some of the jurors may have misunderstood the court's charge, or may have misinterpreted it, as they stated, to mean that the speed of the ambulance was no evidence of negligence, the charge itself is clear and warrants no such interpretation. Failure of the jurors to comprehend the charge of the court, or to apply the law as given therein to the facts proven is no ground for impeaching their verdict. Texas Employ-

ers' Ins. Ass'n v. Eubanks (Tex. Civ. App.) 294 S. W. 905 (writ ref.) and cases there cited; Bradley v. T. & P. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861. Nor can such verdict be impeached on the ground that the jury answered a question under a mistake of the meaning or result thereof; nor because of illogical reasons on which such verdict was reached. While it was misconduct to consider the matter of a speed ordinance as governing appellee's driver [Miks v. Leath (Tex. Civ. App.) 26 S.W.(2d) 726], after the communication with the court, one of the jurors who testified stated that the jury then concluded that the speed ordinance was an extraneous matter and was not further considered in answering the question. The misconduct thus we think became immaterial.'

Finding no error, the judgment of the trial court is affirmed.

Affirmed.